UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY PERCY, MATTHEW PERCY,
A.D. HOLDING CORPORATION,
A.D. TRANSPORT EXPRESS, INC.,
A.D. TRANSPORTATION EQUIPMENT, INC.
ADLP GAS, INC., A.D. REAL ESTATE
HOLDING CORPORATION, 5601, INC.,
and 44650, INC.,

                Plaintiffs,

v.

CHARTER TOWNSHIP OF CANTON,
PATRICK WILLIAMS, TIM FAAS,
JEFFREY GOULET, LEIGH THURSTON,
ROBERT CREAMER, MARK HOOK,        Civil Case No. 19-11727
and NICOLE HAMILTON,            Honorable Linda V. Parker

                Defendants.

and

CHARTER TOWNSHIP OF CANTON,

                Counter-Plaintiff,

v.

5601, INC.,

                Counter-Defendant.
_____/

## OPINION AND ORDER

Plaintiffs initiated this action under 42 U.S.C. § 1983 on June 10, 2019. In their Complaint, Plaintiffs claim that Defendants engaged in First Amendment retaliation (Count I) and vindictive enforcement in violation of the Fourteenth Amendment's Equal Protection Clause (Count II) in response to objections by Matthew and Gary Percy to the Charter Township of Canton's enforcement of its "tree ordinance."[1] (ECF No. 1.) On August 15, 2019, the Charter Township of Canton (hereafter "Township") filed a Counter-Complaint against 5601, Inc., a real estate business owned by Matthew and Gary Percy, which owns two parcels of property in the Township. (ECF No. 17.) The Township's sixteen-count Counter-Complaint asserts violations of zoning, building, and fire prevention and protection ordinances or codes based on the lack of certificates of occupancy and the failure to post certificates of occupancy for buildings on the properties. (*Id*.) The matter is currently before the Court on the parties' cross-motions for summary judgment with respect to the Complaint and Counter-Complaint.[2]

---

[1] The "tree ordinance" refers to Article 5A.00 of the Township's Code of Ordinances, titled: "Forest Preservation and Tree Clearing". *See* https://canton_charter_township/code_of_ordinances.

[2] Plaintiffs filed a motion to dismiss the Counter-Complaint (ECF No. 53), which remained pending when they filed a motion for summary judgment asserting the same grounds for dismissal (ECF No. 82). The Court is therefore denying as moot the motion to dismiss.

# I.   Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

# II.   Factual and Procedural Background

## A.   The Parties and the Relevant Properties

Brothers Gary and Matthew Percy reside in the Township. (ECF No. 1 at Pg ID 6 ¶ 18.) They own the remaining plaintiff businesses, which consist of "Trucking Businesses" (A.D. Holding Corporation, A.D. Transport Express, Inc., A.D. Transportation Equipment, Inc., A.D. Equipment, Inc. and ADLP Gas, Inc.) and "Real Estate Businesses" (A.D. Real Estate Holding Corporation, 5601, Inc., and 44650, Inc.). (*Id.*)

3

5601, Inc. owns two adjacent industrial parcels of property in the Township, referred to as "Parcel A" and "Parcel B," on which the Trucking Businesses operate. (*Id*. at Pg ID 9-10 ¶ 31; ECF No. 1-2.) Parcel A contains four structures: (1) the North Office Building or Unit 1; (2) the South Building or Unit 2; (3) the Truck Wash Building or Unit 3; and (4) the Fuel Island or Unit 4. (ECF No. 1 at Pg ID 10 ¶ 32.) They all bear the address 5601 Belleville Road. (*Id*.) Parcel B contains two structures: (1) the Shop Building with the address 5699 Belleville Road, and (2) the Cross Dock Building with the address 45050 Yost Road. (*Id*. at Pg ID 11 ¶ 37.)

In mid-2017, 44650, Inc. purchased a 16-acre parcel of property in the Township, referred to as "Parcel C." (*Id*. ¶ 40.) Parcel C is vacant land, which was in poor condition when it was acquired. (*Id*. ¶¶ 40, 41.) The property was overgrown with invasive and nuisance species of vegetation, as well as scrub brush, cottonwood trees, and many ash trees which had died. (*Id*. ¶ 42.)

Defendants are the Township, which is located in Wayne County, and current or former Township officials, sued in only their official capacities. (*Id*. at Pg ID 7-9 ¶¶ 22-28.) Defendant Pat Williams is the Township Supervisor and the presiding officer of the Township's Governing Board. (*Id*. at Pg ID 7 ¶ 22.) Williams administers the Township's affairs and oversees its municipal

4

departments.  (*Id*.)  The parties agree that Williams is a Township policy-making official.  (*Id*.; ECF No. 88 at Pg ID 2833.)

Defendant Tim Faas was previously the director of the Township's Municipal Services Department.  (ECF No. 1 at Pg ID 8 ¶ 23.)  In that position, Faas oversaw the Township's building and inspection, planning, engineering, and public works divisions, which included the administration of the Township's tree removal ordinance.  (*Id*.)  The parties agree that Faas was a policy-making official with decision-making authority.  (*Id*.; ECF No. 88 at Pg ID 2833.)

Defendant Jeff Goulet is the Township's Chief Community Planner, with direct responsibility for overseeing the Township's zoning and planning functions, which includes maintenance of the master zoning map, the processing of site plans, special land use, and tree removal permit applications.  (ECF No. 1 at Pg ID 8 ¶ 24.)  Goulet also is a policy-making official with decision-making authority. (*Id*.; ECF No. 88 at Pg ID 2833)  Defendant Leigh Thurston is the Township's Planner and Landscape Architect, responsible for administering the Township's tree removal ordinance.  (ECF No. 1 at Pg ID 8 ¶ 25.)  Thurston reports to Goulet. (*Id*.)

Defendant Robert Creamer is the Township's Chief Building Official, responsible for overseeing building inspections, the issuance of certificates of occupancy, and enforcement of building and zoning ordinances.  (*Id*. at Pg ID 8-9

5

¶ 26.)  He also is a policy maker for the Township.  (ECF No. 88 at Pg ID 2833.)
Defendant Mark Hook is the Township's Ordinance Inspector, tasked with
enforcing zoning and building ordinances.  (*Id*. at Pg ID 9 ¶ 27.)  He reports to
Creamer.  (*Id*.)  Defendant Nichole Hamilton is a Township's fire inspector, tasked
with enforcing the Township's Fire Prevention and Protection Code ("Fire Code").
(*Id*. ¶ 28.)

### B.    The Tree Ordinance Dispute

In early Fall 2017, DTE Energy cleared a large swath of Parcel C where
utility and other easements exist.  (*Id*. at Pg ID 12 ¶ 43.)  44650, Inc. thereafter
cleared the remainder of the parcel.  (*Id*. ¶ 44.)

On April 27, 2018, Thurston received a telephone call from a property
owner adjacent to Parcel C, reporting the tree and vegetation removal.  (ECF No.
10-17 at Pg ID 263 ¶ 15.)  Surveying Parcel C from a neighboring parcel, Thurston
observed that the entire area had been clear cut of all trees and vegetation.  (ECF
No. 10-11 at Pg ID 212-14.)  Thurston viewed the tree removal as a violation of
the Township's tree ordinance, which prohibits a property owner from removing
certain trees on the owner's land without a permit and requires the owner to
mitigate the removal by replacing the trees on the property or different property or
paying a designated amount into the Township's tree fund.  *See F.P. Dev., LLC v.
Charter Twp. of Canton*, 16 F.3d 198, 201 (6th Cir. 2021) (describing the

ordinance and finding it unconstitutional).  Thurston also believed that earth

moving work had been done on Parcel C within a county drain in the jurisdiction

of the Wayne County Drain Commissioner's ("Drain Commissioner"), in wetlands

under the jurisdiction of the Michigan Department of Environmental Quality

("MDEQ"), and/or in violation of Wayne County's soil erosion and sedimentation

ordinances.  (ECF No. 10-11 at Pg ID 212-14.)

Thurston immediately called Gary Percy to notify him that the removal

violated the Township's tree ordinance and would result in as much as $700,000 in

fines.  (ECF No. 10-17 at Pg ID 264 ¶ 21; ECF No. 92-12 at Pg ID 3797 ¶ 36.)

Gary Percy then contacted Williams and told him the fines were "ridiculous."

(ECF No. 92-12 at Pg ID 3797 ¶ 37.)  On May 4, 2018, Thurston sent emails to

MDEQ, Wayne County, and the Drain Commissioner reporting the activity on

Parcel C "so County and State issues could be addresse[d]."  (*See* ECF No. 83-8 at

Pg ID 2559-60.)  In one of her emails, Thurston also expressed that she hoped "the

County will also investigate the parking of trailers in the Yost ROW."  (*Id*. at Pg

ID 2559.)  In a June 1 email to the State and County agencies, Thurston wrote:

> Canton Township intends to sample POCO's site for species
> composition, size, and density of trees to apply to AD
> Transport's site in the near future.  We believe that will yield a
> fair assessment of trees removed in order to determine the value
> of the trees that needs to be paid into Canton's tree fund.  We
> do have other potential violations if the property owner is not
> cooperative.

(ECF No. 83-13 at Pg ID 2584.)

Goulet, Faas, and Township employee Bob Belair were copied on Thurston's emails.  (*Id.*)  The Township's privilege log reflects that these Township officials, along with Creamer, Williams, and Hook, received numerous emails concerning the tree dispute with the Percys.  (*See* ECF No. 83-18.)  Those communications were not disclosed in discovery, however, because the Township's counsel also was included.  (*Id.*)

In internal communications between Township officials Faas, Thurston, and Bob Belair, concern or disturbance was expressed regarding the failure of the State and County agencies to take action with respect to Parcel C.  (ECF No. 83-9 at Pg ID 2566.)  Township officials followed up with the State and County agencies through May and June 2018, seeking updates on any action being taken.  (ECF No. 83-10 at Pg ID 2569-71.)  In the meantime, Gary Percy rejected requests by Township representatives, up to and including Williams, to gain access to Parcel C to analyze the property and assess the extent of the tree removal.  (ECF No. 10-17 at Pg ID 265 ¶ 30.)  On June 11, at approximately 8:30 a.m., Belaire emailed Thurston asking if she had made any progress on the tree estimate.  (ECF No. 83-14 at Pg ID 2587.)  At around noon, Thurston replied indicating that she had not

8

and was giving Gary Percy "one more shot before [she] go[es] to court to get an administrative order." (*Id.*)

In August 2018, Thurston obtained an administrative warrant to access Parcel C and she and Hook inspected the property with an expert arborist. (ECF No. 10-12 at Pg ID 216-17.) On August 29, Thurston issued a notice of violation of the tree ordinance. (*Id.*)

In early October 2018, the Percys began speaking with the media about the Township's tree fines. (ECF No. 92-12 at Pg ID 3798 ¶ 44; *see also* ECF No. 83-17.) The dispute was discussed in news stories nationally. (*See* ECF No. 83-17; ECF No. 10-18 at Pg ID 462-66 (describing communications from persons with no connection to the Township or the State of Michigan, who had learned of the Township's code enforcement activities).) As Defendants describe: "the Percys' counsel commenced a public relations war against the Township and [its corporation counsel] in particular, by sending [the Township's] settlement proposal to the news media and to various outlets, to gin up public sentiment against the Township." (ECF No. 91 at Pg ID 90; *see also* ECF No. 88 at Pg ID 2808.) Corporation counsel for the Township, Kristin Kolb, wrote the Percys' attorney expressing displeasure about their press communications. (ECF No. 83-19 at Pg ID 2763-65.)

On November 9, 2018, the Township filed a lawsuit in State court against

44650, Inc., claiming that more than $400,000 was owed to the Township's tree

fund for the unlawful removal of trees.  (ECF No. 10-17.)  44650, Inc. filed a

counter-complaint against the Township on December 17, 2018, challenging the

constitutionality of the tree ordinance.[3]

### C.    Township Fire & Building Inspections

In the meantime, in early 2018, the Township's Fire Marshal assigned

Hamilton to conduct "routine maintenance" inspections of buildings in the

Township's south end, near Michigan Avenue, prioritizing buildings not inspected

in the previous three years.  (ECF No. 57-2 at Pg ID 1528 ¶ 9.)  Before conducting

her inspections, Hamilton meets with the owners to have a "business talk."  (*Id.*

¶ 10.)  Hamilton prepares a "Pre-Inspection Checklist" informing the owners of the

items she will address during her inspections.[4]  (*Id.*)  She claims that one of the

first matters she discusses are certificates of occupancy ("CO"), specifically

---

[3] In a July 17, 2020 decision, the Honorable Susan Hubbard of the Wayne County Circuit Court concluded that the Township's application of the tree ordinance as to 44650, Inc. was unconstitutional.  (ECF No. 83-7.)  The Sixth Circuit Court of Appeals in a lawsuit brought by a different Township property owner, held that the tree ordinance's requirement of permits and the payment of fees for removal of certain trees was an unlawful taking in violation of the Fifth Amendment.  *F.P. Dev., LLC v. Charter Twp. of Canton*, 16 F.4th 198 (2021).

[4] Hamilton's affidavit indicates that the current form of the checklist is attached to her affidavit.  (ECF No. 57-2 at Pg ID 1528 ¶ 10.)  It is not.  (*See* ECF No. 57-2.)

whether COs have been issued and whether COs are posted in the buildings as required.  (*Id.*)  Hamilton further claims that she tries to obtain copies of the COs for the owners if they do not have them.  (*Id.*)

On September 29, 2017, Hamilton held her "business talk" with the owners of Steel Technologies located at 5501 Belleville Road, just north of Parcels A and B owned by 5601, Inc.  (*Id.* at Pg ID 1529 ¶ 13.)  Hamilton identified unspecified violations during her first inspection at the property on October 10, which remained uncorrected when she revisited the property on numerous dates in 2018 and again on January 18, 2019.  (*Id*. ¶ 14.)  Steel Technologies eventually passed the maintenance inspection on April 1, 2019.  (*Id*.)

Meanwhile, in February 2018, Hamilton met with the owners of Midwest Auto Salvage, located at 5760 Belleville Road (across the street from Parcels A and B).  (*Id*. at Pg ID 1529 ¶ 12.)  Hamilton conducted her maintenance inspection at the property on February 23 and identified unspecified violations requiring correction.  (*Id*.)  The violations were uncorrected by Hamilton's second inspection on March 9 but completed by a follow-up inspection on March 21.  (*Id*.)

In June 2018, Hamilton researched 5601 Belleville Road and A.D. Transport Express in anticipation of a maintenance inspection at the property.  (*Id*. ¶ 15.)  The Township's records reflected that the property had not been inspected in the previous three years.  (*Id*.)  On June 11, at 2:42 p.m., Hamilton emailed the

administrative assistant for the Township's Building and Inspection Services, inquiring about COs for 5601 and 5699 Belleville Road.  (*Id*. at Pg ID 1530 ¶ 16; *see also* ECF No. 83-15.)

On June 12, Hamilton conducted her "business talk" with Matthew Percy concerning inspections of the buildings at 5601 Belleville Road (i.e., Parcel A), which she scheduled for early August.  (ECF No. 57-2 at Pg ID 1530 ¶ 17.) According to Hamilton, she discussed COs for the buildings with Percy and he indicated he had them, although Hamilton did not see any posted in the building where they met.  (*Id*.)  Hamilton testified during her deposition in this matter that the Township's "previous building official didn't really provide Certificates of Occupancy to the majority of [the] businesses in the township" and therefore, for approximately nineteen years before Creamer became the Building Official, "most of [the buildings in the Township] d[id] not have a written form of a Certificate of Occupancy."  (ECF No. 83-16 at Pg ID 2599, at 26-28.)  Hamilton indicates that she searched the Township's physical records for COs for the buildings on Parcel A, but did not find any.  (*Id*. at Pg ID 1530-31 ¶¶ 18, 19.)

On August 2, 2018, Hamilton inspected the four buildings on Parcel A.  (*Id*. at Pg ID 1531 ¶ 20.)  In an affidavit submitted here, Hamilton states that she found the following problems during her inspection:

12

- Sprinkler heads in the North Office Building (Unit 1) were improperly spaced or missing.  (*Id*.)

- The South Office Building (Unit 2) was approved for heat detection but the building had smoke detectors, which did not comply with the requirement of heat detection.  (*Id*. at Pg ID 1531-32 ¶ 22.)

- Part of the South Office Building was being used as sleeping quarters without the required specific CO and approval from the building department. (*Id*. at Pg ID 1532 ¶ 23.)

- No COs were posted in conspicuous places near the exit or exit access doorway in any of the four buildings on Parcel A, the Shop Building at 5699 Belleville, or the Cross Dock at 45050 Yost Road.  (*Id*. ¶ 25.)

Hamilton informed Creamer that she did not locate COs for the properties (*id*., ¶ 26), and she consulted with Creamer on the various issues noted (ECF No. 17 at Pg ID 612 ¶ 23).

The day after the inspection, Hamilton completed Violation Notices, listing eight violations with respect to Parcel A (i.e., 5601 Belleville) and eight violations with respect to the Shop Building on Parcel B (i.e., 5699 Belleville).  (ECF No. 17 at Pg ID 643-447.)  None of the violations listed reference a lack of COs for any of the buildings except the South Building, where it is noted that the building has sleeping quarters for which the Township lacks information that this was ever allowed.  (*Id*. at Pg Id 644.)  The notice advises that the necessary documentation to permit the arrangement should be submitted for a proper CO to be issued.  (*Id*.)

13

Hamilton sent the notices to Matthew Percy via email on August 3, providing a timetable to correct the violations.  (ECF No. 57-2 at Pg ID 1533 ¶ 28.)

Hamilton conducted follow up inspections at the property on several dates in the second half of 2018.  (*Id.* ¶ 29.)  Hamilton claims that she never issued additional violations beyond those initially identified during her August 2 inspection.  (*Id.*)  She further claims that she only learned of the Percys' tree ordinance dispute with the Township on October 23, during one of her follow-up inspections, at which time Matthew Percy told her about it.  (*Id.* ¶¶ 30, 31.)

On May 30, 2019, Hook issued a Warning Notice of Ordinance Violation for a lack of COs at two buildings on Parcel A (Units 1 and 2) and for the Cross Dock building on Parcel B (45050 Yost Road).  (ECF No. 83-22 at Pg ID 2774.)  Shortly thereafter, Plaintiffs filed their Complaint in this action.  (ECF No. 1.)  In the Counter-Complaint filed by the Township, it asserts claims arising from a lack of COs and posting of COs for all of the buildings on Parcels A and B.  (ECF No. 17.)  The Township's Counter-Complaint was verified by Hamilton and Creamer.  (*Id.* at Pg ID 631.)

In June 2019, Creamer spoke by telephone with his ex-wife, Carolyn Flaherty, an employee of A.D. Transport, while Flaherty was at work.  (*See* ECF No. 94-20 at Pg ID 4130-31, Pgs. 243-45.)  Calls to A.D. Transport are recorded.  (*Id.* at Pg ID 4131, Pg. 244.)  During his deposition in this matter, after listening to

14

a recording of his conversation with Flaherty, Creamer acknowledged that he told her that the Township's issuance of the notice of violation for the COs was a "byproduct" of the Percys' "lawsuit about the trees." (*Id*. at Pgs. 245-47.) Creamer also told Flaherty "that if residents fight notices of violations, it gets ugly[.]" (*Id*. at Pgs. 247-49.) Creamer claimed, however, that he did not mean what he said. (*Id*. at Pg. 249.) According to Creamer, when he said "byproduct" he was referring to the fact that when "there's an issue on a property, everything gets looked at at the property" . . . the Township will then evaluate whether everything on the property complies. (*Id*. at Pg ID 4151, Pg. 325-26.)

John Weyer, the Township's Building Official from approximately 1986 to 2014, attests that he visited Parcels A and B and is familiar with the buildings on the properties. (ECF No. 82-5, at Pg ID 2410-11 ¶¶ 2, 5-7.) Weyer further attests that COs were issued for each of the buildings. (*Id*. at Pg ID 2411 ¶ 8.) He recalls each of the buildings undergoing final inspections and receiving the required final approval or COs (*id*. ¶ 9), and that documentation of those final approvals or COs were in a physical file in the Township's building office (*id*. ¶ 10.) Weyer also recalls a renovation of the North Office Building sometime before 2010. (ECF No. 82-10 at Pg ID 2436 ¶ 8.) According to Weyer, in 2010, he and another Township building inspector assessed and observed the building, finish, and electrical work for the North Building, which had been performed in accordance with the as-built

plans submitted to the Township.  (*Id*. ¶ 9.)  Weyer indicates in his March 5, 2021 declaration that he "recently visited the North Office Building and . . . it is materially the same as what [he] observed in 2010[.]"  (*Id*. ¶ 10.)

Alex Mamo, a Township building inspector from approximately October 1995 to April 2015, apparently was the other building inspector referred to by Weyer.  (ECF No. 82-11 at Pg ID 2442-43 ¶¶ 2, 8, 9.)  Mamo also confirms that the renovation of the North Office Building in 2010 was conducted in accordance with the plans submitted to the Township and was approved by the Township, and that the building remains materially the same today.  (*Id*.)

Mark Lewis, a Township building inspector from approximately 1989 to 2002, was involved in or aware of the Township's issuance of COs for the North Office Building and South Office Building on Parcel A.  (ECF No. 82-9 at Pg ID 2430-31 ¶¶ 2, 7, 8.)

Plaintiffs admit, however, that no physical copy of a CO has been posted in a conspicuous place near the main exit or exit access doorway of any of the properties at issue.  (ECF No. 88-3 at Pg ID 2847 ¶¶ 12-15.)

**D.    Parties' Pleadings & Motions**

As indicated, Plaintiffs allege that Defendants violated their First Amendment rights by retaliating against them in response to the Percys' opposition to the Township's tree ordinance and its application to the 44650, Inc. property.

16

Specifically, Plaintiffs assert that Defendants engaged in retaliation by: (i) reporting conduct to State and County agencies and encouraging those agencies to find violations; (ii) making false statements to the media about the Percy brothers; and (iii) sending code enforcement officers to their properties in search of violations and citing them for violations.  (*See* ECF No. 1 at Pg ID 4-5.)  Plaintiffs further allege that the Township singled them out for selective enforcement of Township codes and ordinances based on the exercise of their First Amendment rights (i.e., criticizing the Township's tree policies).

The parties have filed cross-motions for summary judgment with respect to Plaintiffs' Complaint.  (ECF Nos. 83, 88.)  The motions have been fully briefed. (ECF Nos. 91, 94, 95, 98.)  Defendants raise a number of arguments for why they believe Plaintiffs' claims are subject to dismissal, including that Plaintiffs fail to present evidence to support the elements of their claims, that several of the named plaintiffs lack standing, and that many of the named defendants had little or no involvement in the actions at issue.  Defendants also argue that nominal damages are unavailable against officials sued in their official capacities where there is no evidence of an official action violating Plaintiffs' constitutional rights.

As also indicated, the Township's Counter-Complaint asserts violations of the Township's Zoning Ordinance and Fire Code based on the lack of COs for the buildings on 5601, Inc.'s property and the failure to properly display COs in the

buildings. (ECF No. 17.) The parties have filed cross-motions for summary

judgment as to the Township's counterclaims (ECF Nos. 82, 89), which also are

fully briefed (ECF Nos. 92, 93, 96, 97). At the Court's request, the parties also

filed supplemental briefs. (ECF Nos. 99, 100.) 5601, Inc. argues that the

Township's claims are time-barred by the applicable statute of limitations. The

Township maintains that there is no genuine issue of material fact concerning the

alleged violations.

## III.  Applicable Law and Analysis Regarding Plaintiffs' Claims

### A.  Standing

As indicated, Defendants argue that some of the named plaintiffs lack

standing because they suffered no concrete or particularized injury. "To establish

standing, a plaintiff must show a concrete and particularized injury that is actual or

imminent, a causal connection between the injury and the conduct complained of,

and likelihood that a favorable decision will redress the injury." *Ne. Ohio*

*Coalition for the Homeless v. Husted*, 837 F.3d 612, 624 (6th Cir. 2016) (citing

*H.D.V.-Greektown, LLC v. City of Detroit*, 568 F.3d 609, 616 (6th Cir. 2009)). All

of the plaintiff businesses operate out of the buildings that are the target of the

Township's alleged retaliatory activity. In any event, there is no dispute that the

Percys and 5601, Inc. (as the owner of the alleged targeted properties) have

standing. The presence of one party with standing is sufficient to render the claims

18

before the Court justiciable.  *Id*. at 623-24 (citing *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 330 (1999)).

### B.   Availability of Nominal Damages Against Official Capacity Defendants

The Township argues that nominal damages are unavailable because Plaintiffs fail to show that any alleged retaliation arose from a Township policy, practice, or procedure.[5]

To establish a § 1983 claim against a municipality, the plaintiff must show a constitutional deprivation that was due to a municipal custom or policy.  *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978)).  The plaintiff can show a policy or custom through: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a

_____

[5] To the extent Defendants argue that any defendant must be dismissed because Plaintiffs cannot establish the necessary elements of their claims against that particular defendant, the argument fails.  This is because, in addition to their request for nominal damages, Plaintiffs are seeking prospective injunctive relief. (*See* ECF No. 1 at Pg ID 29.)  The proper defendant in a suit for prospective injunctive relief is any officer with some connection with the enforcement of the act sought to be enjoined.  *See Ex parte Young*, 209 U.S. 123, 157 (1908) (explaining that "[t]he fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact," when identifying the proper defendant to a suit for prospective relief); *see also Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015) (applying *Ex parte Young* to conclude that the defendants were proper parties to the litigation).

policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.* (citing *Monell*, 436 U.S. at 694; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480; *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996)).  Plaintiffs rely on the second method, claiming that retaliatory actions were taken by decisionmakers and ratified by decisionmakers.

Plaintiffs present evidence suggesting that Thurston and Hamilton were decisionmakers as they were granted authority to interpret the ordinances they enforced and to determine whether those ordinances had been violated, and the Township offers no evidence suggesting that their decisions were overseen by the department heads to whom they reported.  (ECF No. 94-22 at Pg ID 4234; ECF No. 94-20 at Pg ID 4139 at 279.)  In *Paterek v. Village of Armada, Mich.*, 801 F.3d 630 (6th Cir. 2015), the court held that officials "imbued with the primary responsibility for enforcing the [municipality]'s zoning ordinances (and determining whether an ordinance had in fact been violated)" were officials with final decision-making authority.  *Id.* at 652.  Even if there is a question of fact as to whether Thurston and Hamilton were final decisionmakers, the evidence reflects that officials who undisputedly held such authority were informed of and ratified the actions these code enforcement officers took.

20

Municipal "liability can be established by showing that 'an official with final decision making authority ratified the illegal actions.'"  *Id.* at 651 (brackets omitted) (quoting *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117-18 (6th Cir. 1994)); *see also Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)) (explaining that if authorized policymakers "affirmatively approv[e]" a subordinate's decision, "'their ratification would be chargeable to the municipality because their decision is final' policy").  The Township concedes that actions by Faas, Goulet, and Creamer "could fairly be said to represent official policy of Canton Township[.]" (ECF No. 88 at Pg ID 2388.)  Bob Belaire, then the head of the Township's Public Works Department also was a likely decisionmaker.

Belaire sent at least one email regarding the tree removal on Parcel C and Faas, Goulet, and Belaire were copied on the various emails sent by Thurston, including the emails sent to State and County enforcement agencies informing them of the activity and inquiring—perhaps urging, as Plaintiffs characterize—them to take enforcement action.  (ECF No. 94-5; ECF No. 94-6; ECF No. 94-7.) Williams also was copied on emails involving the Township's enforcement activities.  (ECF No. 94-23.)  Creamer, the Township's Chief Building Official, was involved in discussions with other Township officials and code enforcement officers regarding the Percys and the subject properties beginning with the initial

21

tree dispute in April 2018.  (*Id.*)  Hamilton consulted with Creamer regarding the

enforcement actions and violations noted, and Creamer signed the Counter-

Complaint here.  Creamer's statement to his ex-wife that those activities were the

"byproduct of the lawsuit about the trees" and if you fight the Township "it gets

ugly" could suggest to a reasonable jury that he knew the enforcement actions were

retaliatory and, at the very least, failed to correct his subordinates' unconstitutional

behavior.[6]  Belaire also was copied on many of the communications involving the

subject building enforcement activities.

For these reasons, the Court finds a genuine issue of material fact as to

whether the alleged retaliatory actions were taken pursuant to a municipal policy or

custom.

### C.     First Amendment Retaliation

"[T]he First Amendment prohibits government officials from subjecting an

individual to retaliatory actions . . . for speaking out[.]"  *Hartman v. Moore*, 547

_____

[6] Creamer may have testified during his deposition that his words to his ex-wife
had a different meaning; however, that is for the trier of fact to decide.
"Credibility determinations . . . are jury functions[.]"  *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 255 (1986).  Moreover, Plaintiffs cast doubt on Creamer's
explanation that he meant that "once there's an issue on a property, everything gets
looked at at the property, no matter what . . . You would look at the property and
make sure everything complies" (ECF No. 91 at Pg ID 4151, at 325-26), as
Plaintiffs claim that different properties were targeted other than the property at
issue.  Parcels A and B also were not owned by the same entity as Parcel C.

22

U.S. 250, 256 (2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998));

*see also Perry v. Sinderman*, 408 U.S. 593, 597 (1972) (the government may not

punish individuals or deprive them of a benefit based on their "constitutionally

protected speech").  A plaintiff claiming First Amendment retaliation generally

must prove three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse
> action was taken against the plaintiff that would deter a person
> of ordinary firmness from continuing to engage in that conduct;
> and (3) there is a causal connection between elements one and
> two—that is, the adverse action was motivated at least in part
> by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  "[A]n adverse

action is one that would deter a person of ordinary firmness from the exercise of

the right at stake."  *Id.* (quotation marks omitted).

    "Once the plaintiff has met his burden of establishing that his protected

conduct was a motivating factor behind any harm, the burden of production shifts

to the defendant."  *Id.* at 399 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v.

Doyle*, 429 U.S. 274 (1977)).  "If the defendant can show that he would have taken

the same action in the absence of the protected activity, he is entitled to prevail on

summary judgment."  *Id.*

Defendants challenge Plaintiffs' ability to establish all three elements of their retaliation claim.[7]

### 1.    Protected Conduct

Plaintiffs claim that the Percys engaged in First Amendment protected activity when they (1) disputed the validity of the tree ordinance starting in late April 2018,[8] first by complaining to Thurston[9] and Williams and then to state

---

[7] Plaintiffs assert that the first two elements are not in dispute, citing to Defendants' previously filed brief in response to Plaintiffs' motion for preliminary injunction.  (ECF No. 83 at Pg ID 2477 (citing ECF No. 20 at Pg ID 719).)  However, in that brief, Plaintiffs clearly conceded the first two elements only "[f]or purposes of th[at] motion[.]"  (ECF No. 20 at Pg ID 719.)  Defendants' response to Plaintiffs' pending summary judgment motion suggests that Defendants are now challenging Plaintiffs' ability to establish all three elements of their retaliation claim.  (ECF No. 91 at Pg ID 3215-17.)

[8] As Defendants point out, Gary Percy does not provide a date in his affidavit for when he told Williams the fines for the tree removal "were ridiculous."  (*See* ECF No. 83-5 at Pg ID 2518 ¶ 37.)  Percy indicates, however, that it was after this discussion that he was informed of the Township's complaints to the State and County agencies and when those agencies inspected Parcel C.  (*Id*. at Pg ID 2518-19, ¶¶ 38, 39.)  A June 7, 2018 email between Thurston, Belair, and Faas reflects that Wayne County already had inspected the property by that date.  (ECF No. 83-9 at Pg ID 2566.)  Defendants maintain that Percy did not complain to Williams until at least June 2018.  (ECF No. 91 at Pg ID 3220.)  To the extent there is a dispute regarding this issue, it is not material to the outcome of the pending motions as Plaintiffs allege adverse actions after June 2018.

[9] Plaintiffs cite only to Gary Percy's affidavit to show that Gary Percy complained to Thurston about the tree ordinance during their first conversation in April 2018.  (*See, e.g.*, ECF No. 83 at Pg ID 2470-71 (citing ECF No. 83-5 ¶¶ 36, 37).)  Percy does not state in his affidavit, however, that he opposed the Township's actions when he spoke with Thurston, even though she allegedly told him that his

24

legislators and the media, (2) filed a counter-complaint in the state court

challenging the constitutionality of the tree ordinance, and (3) filed the pending

lawsuit.  Such conduct clearly constitutes First Amendment protected activity.  As

the Sixth Circuit has stated:

> Since the day the ink dried on the Bill of Rights, "the right of an
> American citizen to criticize public officials and policies is 'the
> central meaning of the First Amendment.'"  *Glasson v. City of
> Louisville*, 518 F.2d 899, 904 (6th Cir. 1975) (quoting *New
> York Times v. Sullivan*, 376 U.S. 254, 273, 84 S. Ct. 710, 11
> L.Ed.2d 686 (1964)).  There can be no doubt that the freedom
> to express disagreement with state action, without fear of
> reprisal based on the expression, is unequivocally among the
> protections provided by the First Amendment.  *See id.*; *Bloch
> [v. Ribar*, 156 F.3d 673, 682 (6th Cir. 1988)]; *see also Barrett
> v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997) ("The First
> Amendment right to criticize public officials is well-established
> and supported by ample case law.

*McCurdy v. Montgomery Cnty., Ohio*, 240 F.3d 512, 520 (6th Cir. 2001) (brackets

and ellipsis removed); *see also Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202,

209 (6th Cir. 2010) ("The filing of a lawsuit to redress grievances is clearly

protected activity under the First Amendment."); *Holzemer v. City of Memphis*,

621 F.3d 512, 521-22 (6th Cir. 2010) (concluding that informal, oral complaints

---

company owed the Township as much as $700,000 in fines for violating the tree
ordinance.  (ECF no. 83-5 at Pg ID 2518 ¶ 36).  This does not preclude Percy from
stating at trial that he did.

regarding government activity "is consistent with the Supreme Court's jurisprudence on lobbying and protesting as protected petitioning activity").

### 2.   Adverse Actions

Plaintiffs assert that Defendants took adverse actions against them after Plaintiffs engaged in protected conduct, including: (1) contacting State and County regulatory agencies to report the activity on Parcel C; (2) sending emails to Plaintiffs' counsel criticizing the Percys for exercising their First Amendment rights; (3) engaging in inspection and enforcement activities with respect to separate property from where the tree removal occurred; and (4) asserting counterclaims alleging violations exceeding those originally noticed.  (ECF No. 83 at Pg ID 2478.)  While the timing of these actions might reflect that they were not retaliatory, as Defendants argue, that goes to whether there is a causal connection between the alleged protected conduct and adverse actions, not whether the actions were adverse.

There can be no real dispute that the alleged actions were sufficiently adverse to dissuade the ordinary citizen from engaging in protected conduct. *Benison v. Ross*, 765 F.3d 649, 660 (6th Cir. 2014) (suit filed in response to First Amendment activity deemed adverse action); *Paterek v. Village of Armada, Mich.*, 801 F.3d 630, 645 (6th Cir. 2015) (issuing tickets to the plaintiffs constituted adverse actions); *Simmermon v. Gabbianelli*, 865 F. Supp. 2d 589, 599 (D.N.J.

26

2012) ("The decision to investigate and prosecute violations of the zoning law is discretionary, and if taken for retaliatory reasons can constitute the kind of adverse action necessary for finding a violation of the First Amendment.").[10]  As the Sixth Circuit has stated, "nothing justifies 'harassing people for exercising their constitutional rights,' so the deterrent effect on speech 'need not be great' to be actionable."  *Rudd v. City of N. Shores, Mich.*, 977 F.3d 503, 514 (2020) (quoting *Thaddeux-X*, 175 F.3d at 397); *see also Holzemer*, 621 F.3d at 524 (quoting *Thaddeus-X*, 175 F.3d at 398) ("We have held that the adverse-action requirement 'is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment.'").

---

[10] Defendants state several times in their briefs that the actions asserted "were not adverse because they were either protected themselves, non-retaliatory in nature, required under State and/or local law, or the Defendant was not involved with the issues of this case at all."  (*See, e.g.*, ECF No. 91 at Pg ID 3217-18.)  As discussed *infra*, the question of whether the actions were "non-retaliatory in nature" is relevant to causation, not to whether the conduct constituted an "adverse action." The Court addressed *supra* Defendants' arguments regarding personal involvement of each named individual defendant.  Defendants fail to develop their argument that the actions were "protected" or non-adverse because they were required under State and/or local law.  As the Sixth Circuit has repeatedly explained, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001) (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)); *Slater v. Potter*, 28 F. App'x 512, 513 (6th Cir. 2002) (citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

### 3.    Causation

This factor looks at "whether the alleged adverse action 'was taken at least in part because of the exercise of the protected conduct.'" *Holzemer*, 621 F.3d at 525 (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005)); *see also Paterek*, 801 F.3d at 645 (quoting *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010)).  "Ordinarily, causation is a question to be resolved by a jury, but a court may grant summary judgment on the issue of causation when there is no genuine issue of material fact from which a reasonable jury could conclude that the [adverse action] was motivated in part by [the plaintiff's] speech." *Burgess v. Paducah Area Transit Auth.*, 387 F. App'x 538, 545 (6th Cir. 2010) (citing *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997)); *see also Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018) (quotation marks and citations omitted) (explaining that "usually, the question of causation is a factual issue to be resolved by a jury . . ." but "a court may grant summary judgment even in a causation inquiry, where it is warranted").

"A causal link can be shown through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse . . . action, or demonstrating the disparate treatment of similarly situated individuals." *Benison*, 765 F.3d at 661 (quotation marks and

28

internal citations omitted). The Court finds a jury issue with respect to causation for several reasons.

The first is the close temporal proximity between the Percys' complaints to Township officials and statements to the media and the alleged adverse actions. Contrary to Defendants' claim, there was not a fourteen-month gap between the asserted protected conduct and adverse actions. (*See* ECF No. 91 at Pg ID 3220.) The timeline outlined by Defendants does not reflect one single retaliatory act many months after protected conduct. Instead, it identifies several protected actions and multiple alleged retaliatory acts, with certain acts falling days, or at least a few months, after the asserted protected conduct. (*Id.*) For example, even if Gary Percy did not complain to Thurston about the tree ordinance when Thurston first called him about the tree removal on Parcel C—something a jury may find unlikely given Defendants' characterization of the Percys (*see* ECF No. 20 at Pg ID 708; ECF No. 88 at Pg ID 2805; ECF No. 91 at Pg ID 3204)—Gary Percy undisputedly challenged the tree fine when he contacted Williams. Shortly thereafter, Thurston sent follow-up emails to the State and County agencies which could be viewed as encouragements for those agencies to take action related to

Parcel C. [11]  Hamilton began her enforcement activities shortly after the tree

dispute developed.  Further, new Zoning Ordinance and Fire Code violations were

identified, arguably, only after the Percys began speaking to the media and filed a

counter-complaint challenging the constitutionality of the tree ordinance.[12]

Causation also is supported by the Chief Building Official's own words.  A

reasonable jury could find Creamer's statements to his ex-wife to be evidence that

his department's enforcement activities were the result of the Percys' complaints

regarding the Township's tree ordinance.  Creamer was copied on early emails

regarding the tree dispute (*see, e.g.*, ECF No. 98-9 at Pg ID 4493) and, as the

Township indicates, he is the individual "charged with enforcement of the State

Construction Code Act and the Michigan Building Code" and he eventually

became involved in the enforcement activities concerning Parcels A and B.  (ECF

No. 91 at Pg ID 3226.)

---

[11] While Defendants assert that Thurston made the decision to report the violations
to the State and County agencies before speaking with Gary Percy (ECF No. 91 at
Pg ID 3223), Defendants fail to cite evidence to support this assertion.

[12] Hamilton's inspection notes from August 2 focus on a CO for "[t]he smaller
front building [that] has sleeping quarters[.]"  (ECF No. 83-20 at Pg ID 2767.)
There is no mention of COs for any other building or the failure to post COs.  (*Id.*)
Hamilton's notes on October 5, 2018 again only reflect a lack of a CO "for one of
the buildings[.]"  (*Id.* at Pg ID 2768.)

A reasonable jury also might disbelieve the Township's assertion that Hamilton's enforcement actions with respect to Parcels A and B were "wholly unrelated" to the tree dispute (*see* ECF No. 88 at Pg ID 2809) and that Hamilton was unaware of the dispute prior to October 23, 2018 (ECF No. 57-2 at Pg ID 1533 ¶ 31). Goulet, Faas, and Belair were copied on Thurston's emails. (*Id.*) The Township's privilege log reflects that these Township officials, along with Creamer, Williams, and Hook, received numerous emails concerning the tree dispute with the Percys. (*See* ECF No. 83-18.) Creamer and Hook participated in the building enforcement activities. Hamilton ultimately reports to Creamer. Given the numerous communications concerning the tree dispute and the number of Township employees who were privy to these communications, a reasonable jury might question Hamilton's credibility concerning her knowledge and the impetus for her investigations, as well as whether the actions against the Percys were arbitrary.

Moreover,  a reasonable jury might view the timing of Hamilton's enforcement actions as specious. Hamilton began asking about Parcels A and B within two weeks of Thurston's email to Township officials, including Belaire, indicating that the Township had "other potential violations if the property owner is not cooperative" and within hours of Belaire's inquiry as to whether Thurston had obtained the Percys' cooperation regarding the tree dispute. Nothing in the

31

record reflects why Hamilton focused on those properties when she did.[13]  While

she inspected two neighboring properties within the previous nine months, a

reasonable jury still could find that she selected Parcels A and B in response to the

tree dispute.  But even if the decision to investigate those properties was not

retaliatory, the subsequent enforcement decisions, including the filing of a counter-

complaint alleging violations not previously noted, could be found to have been

motivated by improper reasons.

Also relevant is the fact that the Township had not conducted a "routine"

inspection of the subject properties in about nineteen years.  (ECF No. 83-16 at Pg

ID 2595, pg. 12-13.)  And despite acknowledging that "a very large number of

businesses in Canton" did not have written COs due to the practices of the former

Township building official (ECF No. 83-16 at Pg ID 2599, pg. 26-27), the

Township issued citations and brought nuisance counterclaims based on 5601,

Inc.'s failure to produce those COs.

---

[13] Hamilton testified that she was assigned to the area south of Cherry Hill and then
specifically to the area north and south of Michigan Avenue (ECF No. 83-16 at Pg
ID 2597, pg. 19), although she could not recall exactly when this happened or who
gave her the instruction (*id*. at 18-19).  There is no evidence that she had planned
to inspect Parcels A or B before information about the tree dispute was circulated
among Township officials.  There is no indication in the record as to how or why
she chose Parcels A and B for inspection when she did.  A view of the area on a
map reflects that there are many other properties in Hamilton's "assigned" area
which she could have chosen.

32

Defendants assert that the enforcement actions would have happened regardless of the Percys' protected conduct and that those actions were mandated under State and/or local law.  But a reasonable jury could reject this assertion given that there had been no inspections of the subject properties in almost nineteen years.  While the Township may have been required to inform State and County agencies of activities believed to violate State or County law, a reasonable jury could find that Defendants did more and tried to coerce the State and County agencies to take a firmer hand and issue violations.  To rebut Plaintiffs' showing of causation, Defendants must show not only that they "*could* have" taken the alleged action in the absence of the Percys' conduct but also that "they *would* have[.]" *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989); *see also Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002) (emphasis added) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)) ("To show causation, 'a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action *would not* have been taken' in the absence of the protected conduct.").

### 4.    Probable Cause Requirement

Plaintiffs address the probable cause requirement discussed in *Hartman v. Moore*, 547 U.S. 250 (2006), and *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019), anticipating that Defendants would rely on those decisions to argue that Plaintiffs

33

must show an absence of probable cause to prevail on their First Amendment

claim.  (*See* ECF No. 83 at Pg ID 2485-87.)  In those cases, the Supreme Court

held that a plaintiff generally can prove a causal connection between protected

speech and an arrest or prosecution only if the plaintiff shows that the defendant

lacked probable cause for that arrest or prosecution.  *Nieves*, 139 S. Ct. at 1727;

*Hartman*, 547 U.S. at 265-66.  Defendants, however, have not made the argument

Plaintiffs anticipated.

Defendants do cite *Hartman* more than once, but only in support of their

assertion that "[t]here is no liability for retaliation 'if the defendant can show that

he would have taken the same action in the absence of the protected activity."

(ECF No. 88 at Pg ID 2817-18.)  Defendants separately state that "[a] claim for

*retaliatory prosecution* in violation of the First Amendment requires the additional

element that the defendant brought charges against the plaintiff for which there

was an absence of probable cause.  (*Id.* at Pg ID 2817 (emphasis added).)

However, Defendants fail to develop this argument.  As noted earlier, "issues

adverted to in a perfunctory manner, unaccompanied by some effort at developed

argumentation, are deemed waived."  *United States v. Crozier*, 259 F.3d 503, 517

(6th Cir. 2001) (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir.

1999)).

In any event, this is not a retaliatory prosecution case.  The Sixth Circuit has expanded the no probable cause requirement beyond alleged retaliatory arrests and prosecutions.  *See Meadows v. Enyart*, 627 F. App'x 496, 506-07 (2015) (extending the requirement to regulatory-enforcement proceedings against the plaintiff); *see also Barnes v. Wright*, 449 F.3d 709, 719-20 (6th Cir. 2006) (imposing a probable cause requirement with respect to a First Amendment claim alleging retaliation based on law-enforcement officers' direct initiation of grand-jury proceedings against the plaintiff).  Nevertheless, Defendants have not argued for the extension of the no-probable-cause requirement here.  Further, Defendants have waived any argument that the exceptions to the no-probable-cause rule are inapplicable here.  Defendants failed to respond to Plaintiffs' arguments (*see* ECF No. 83 at Pg ID 2487-90) regarding the applicability of the exceptions to the probable-cause requirement outlined in *Nieves*, 139 S. Ct. at 1727, and *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018).  Plaintiffs' argument that probable cause was lacking when the investigation of Parcels A and B commenced also was met by Defendants' silence.

## C.    Equal Protection

The Fourteenth Amendment's Equal Protection Clause requires like treatment of similarly situated individuals and the selective enforcement of an otherwise valid law or regulation against an individual can be the premise of a

claim under the clause.  The Sixth Circuit has described three types of selective

enforcement claims:

> (1) those brought by members of a protected class alleging the
> government arbitrarily discriminated against them based on
> class membership; (2) those brought by individuals who claim
> they were punished for exercising a constitutionally protected
> right, *see Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1056 (6th
> Cir. 1996); and (3) those brought by individuals who are not
> members of a protected class and are not alleging an
> infringement of a constitutionally protected right but rather
> claim to be a "class of one" and allege that the government
> intentionally treated them "differently from others similarly
> situated and that there was no rational basis for the difference in
> treatment." *Village of Willowbrook v. Olech*, 528 U.S. 652,
> 564, 120 S. Ct. 1073, 145 L.E.2d 1060 (2000).

*Hillside Productions, Inc. v. Duchane*, 249 F. Supp. 2d 880, 897 (E.D. Mich.

2003).  The Sixth Circuit has identified the first type as "selective prosecution" and

the second type as "[v]indictive prosecution[.]"  *Futernick*, 78 F.3d at 1056 n.7.

Plaintiffs allege the second type of selective enforcement.  They claim that

Defendants selectively enforced the Township's ordinances against them in

retaliation for the Percys' First Amendment activities.

A plaintiff alleging vindictive prosecution must demonstrate: "(1) exercise

of a protected right; (2) the prosecutor's 'stake' in the exercise of that right; (3) the

unreasonableness of the prosecutor's conduct; and, presumably, (4) that the

prosecution was initiated with the intent to punish the plaintiff for exercise of the

protected right."  *Id.* (citations omitted); *see also Cleveland Constr., Inc. v. OSHA*

36

*Review Comm'n*, No. 99-3044, 1999 WL 1253100, at *2 (6th Cir. 1999) (quoting

*Futernick*).  Defendants challenge Plaintiffs' ability to satisfy the first and fourth

elements, albeit only in the context of Plaintiffs' retaliation claim.  As discussed

above, the Court finds that the Percys exercised a protected right (i.e., their First

Amendment right to petition and criticize the government) and that there are

genuine issues of material fact as to whether Defendants' enforcement actions were

initiated with the intent to punish Plaintiffs for the exercise of that right.

Addressing Plaintiffs' equal protection claim specifically, Defendants first

argue that the claim fails because the buildings on Parcels A and B would have

been inspected and cited for violations regardless of the Percys' activities.

However, as also discussed in the preceding section, this is a determination the jury

must decide.

Defendants next argue that Plaintiffs were not treated differently than other

property owners in the Township, as other properties were inspected in a similar

fashion and the Township sued at least two other property owners for lack of COs

and zoning violations when the owners failed to cure the violations.  The Court

does not believe that the first two types of selective enforcement claims—in

comparison to a class-of-one claim—require proof that the defendants have never

enforced the law in question against another individual.  *See, e.g., Nieves*, 139 S.

Ct. at 1727 (explaining as a scenario for a retaliatory arrest claim the situation

where, "at many intersections, jaywalking is endemic but rarely results in arrest[]"
but "an individual who has been vocally complaining about police conduct is
arrested for jaywalking at such an intersection"); *Stemler*, 126 F.3d at 873-874
(concluding that the plaintiff adequately alleged a selective-enforcement claim
based on her arrest and prosecution for driving under the influence).

In any event, Defendants produce evidence of only two other buildings
inspected in the four-year window around the Township's inspections of Parcels A
and B.  With respect to Defendants' evidence that the Township sued other
property owners for lack of COs and zoning violations (ECF Nos. 91-10, 91-11),
that evidence actually supports Plaintiffs' claim.  In one instance, like here, the
Township asserted the violations as counterclaims against the property owner.
(ECF No. 91-10.)  The complaint in the other case, like here, reflects that the
Township had been at odds with the property owners since 1973.  (ECF No. 91-
11.)

### D.    Conclusion

For the reasons discussed above, the Court finds genuine issues of material
fact precluding summary judgment in favor of either side with respect to Plaintiffs'
claims against Defendants.

**IV.    Applicable Law and Analysis Regarding the Township's Counterclaims**

5601, Inc.[14] seeks summary judgment with respect to the Township's counterclaims arguing that: (1) the six-year limitations period in Michigan Compiled Laws § 600.5813 applies to the Township's counterclaims; (2) the statute ran regardless of when the Township allegedly discovered the noticed Zoning Ordinance and Fire Code violations; and (3) the continuing violations doctrine is inapplicable.  The Township asserts that there is no genuine issue of material fact that COs were not issued and that COs are not posted as required. The Court begins with 5601, Inc.'s arguments for, if the counterclaims are time-barred, the Court's analysis ends.

**A.    Statute of Limitations**

The six-year limitations period in Michigan Compiled Laws § 600.5813 applies to the Township's counterclaims.  *See Twp. of Fraser v. Haney*, -- N.W.2d --, 2022 WL 388013, at *2 (Mich. Feb. 8, 2022).   The Township nevertheless argues that the period should be tolled because it did not discover the allegedly unpermitted work until its 2018 inspections.  The Township further maintains that

---

[14] Plaintiffs/Counter-Defendants are identified as moving for summary judgment and responding to the Township's summary judgment motion with respect to the counterclaims, although only 5601, Inc. is named as a party to the Counter-Complaint.  The Court, therefore, is referring only to 5601, Inc. when presenting the arguments asserted in the briefs concerning the Counter-Complaint.

even if COs were issued when the buildings were first erected, 5601, Inc. failed to obtain new COs when they were modified and that there is an issue of fact as to when those modifications were made.

Under Michigan law, "the period of limitations runs from the time the claim accrues." Mich. Comp. Laws § 600.5827. With limited exceptions not applicable here, the statute provides that "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." *Id*. As the Michigan Supreme Court recently advised, a court should "look to [the] plaintiff's complaint to determine when the wrong upon which the claim is based was done." *Haney*, 2022 WL 388013, at * 3.

Counts I through V of the Counter-Complaint allege a nuisance per se, Mich. Comp. Laws § 125.3407, based on the occupancy of four buildings on Parcel A and one building on Parcel B without the issuance of certificates of occupancy in violation of Section 27.08(B) of the Township's Zoning Ordinance. Counts VI through X allege violations of the Michigan Building Code, Michigan Compiled Laws § 125.1501, because the same buildings "do[] not have a valid certificate of occupancy, yet ha[ve] been occupied and used for many years."

Counts IX through XVI[15] allege violations of Section 38-32 of the Fire Code due to the failure to post COs as required at all of the buildings on Parcels A and B.

Therefore, contrary to 5601, Inc.'s assertion in its supplemental briefing (*see* ECF No. 99 at Pg ID 4500) and elsewhere, the wrong alleged with respect to the Zoning Ordinance and Building Code is not the failure to obtains COs when the buildings were erected or modified.  Rather, it is the continued occupancy of buildings lacking COs presumably up to at least the date the Township filed its Counter-Complaint.  Both the Zoning Ordinance and Building Code do not merely prohibit the erection or modification of buildings without COs but also the *continued* occupancy and use of buildings for which COs are lacking.  *See* Zoning Ord. § 27.08(B);[16] Mich. Bldg. Code §§ 111.1, 114.1.[17]  Similarly, the wrong alleged with respect to the Fire Code is the continued failure to post COs.

---

[15] While the last claim listed in the Counter-Complaint is "Count XV" there are two "Count XIII's" previously.

[16] Section 27.08(B) of the Township's Zoning Ordinance reads: "It shall be unlawful to occupy or permit the occupancy of any land, building, or structure for which a permit has been issued, or to occupy or permit the occupancy of any building or structure hereafter altered, extended, erected, repaired, reoccupied, or moved, unless and until a certificate of occupancy has been issued by the building official for such use."  *See https://perma.cc/GMT5-3RX5*.

[17] Section 114.1 of the Building Code states: "It shall be unlawful for any person, firm or corporation to . . . occupy any building, structure or equipment regulated by

41

Thus, again contrary to 5601, Inc.'s supplemental briefing (*see id.* at Pg ID 4501), the Township *is* seeking to eliminate an ongoing or harmful nonconforming use.  Like the piggery in *Haney* that the Michigan Supreme Court concluded is a wrong "being committed as long as the piggery operates[,]" 2022 WL 388013, at *4, the violations alleged in the Counter-Complaint occurred within the limitations period.  As the Court explained:

> The wrong alleged in plaintiff's complaint is defendants' keeping of hogs on their property.  The presence of the hogs on the property constitutes the wrong, and that wrong, along with the attendant harms it causes, is being committed as long as the piggery operates.  For example, the fact that defendants had hogs on their property *yesterday* is not a wrong that occurred until yesterday, and any claims arising from harms due to the hogs' presence yesterday could not have accrued until then either.  Therefore, because defendants had hogs on their property within the limitations period, claims accrued during that period and plaintiff's action is timely.

*Id*.

5601, Inc. nevertheless maintains that *Haney* is distinguishable because—as the Michigan Supreme Court "repeatedly noted"—the township there "sought only injunctive relief to remedy current violations, it did 'not seek to reach back and remedy or impose monetary fines for violations that occurred outside the period of

---

this code, or cause same to be done, in conflict with or in violation of any of the provisions of this code."  https://perma.cc/HXK4-F6MA.

limitations.'" (ECF No. 99 at Pg ID 4500 (quoting *Haney*, 2022 WL 388013, at *2)); *see also Haney*, 2022 WL 388013, at *4 n.14 ("Plaintiff does not seek to impose monetary penalties or to obtain a remedy for actions that occurred more than six years prior to the filing of this case. Rather, plaintiff seeks only an injunction—a remedy to enforce its ordinance against current and future violations."). Despite these statements, the Michigan Supreme Court did not premise its holding on the form of relief sought. Instead, the *Haney* Court was explaining that a plaintiff is not time-barred from seeking relief—whatever its form—provided the violations for which relief is sought occurred within the statutory period of limitations. In other words, as the Court explained, while a plaintiff may be time-barred from seeking "monetary penalties . . . for actions that occurred more than six years prior to the filing of th[e] case," *Haney*, 2022 WL 388013, at *4 n.14, the plaintiff "can always recover for such damages as have accrued within the statutory period immediately prior to suit[,]" *id.* at n.13 (quoting *Russo Farms, Inc. v. Vineland Bd. of Ed.*, 144 N.J. 84, 102, 675 A.2d 1077 (1996)).

In short, the Township's counterclaims are not time-barred. The Court, therefore, is denying 5601, Inc.'s motion for summary judgment with respect to those claims (ECF No. 82). For the reasons discussed below, the Court is denying the Township's motion for summary judgment with respect to its counterclaims as well.

**B.      Merits of the Township's Counterclaims**

As indicated above, the Township asserts that there is no genuine issue of

material fact that COs were not obtained for most of the buildings on Parcels A and

B when they were constructed or modified, and that COs are not posted as required

in any of the buildings. [18]  There is a genuine issue of material fact as to whether

COs were obtained.  Plaintiffs present evidence—including sworn statements from

a former Township building official and inspector—that the buildings were

constructed in their existing state more than six years ago.  (ECF No. 82-2 at Pg ID

2400-01; ECF No. 82-5 at Pg ID 2410-11; ECF No. 82-9 at Pg ID 2430-31; ECF

No. 82-10 at Pg ID 2433-39; ECF No. 82-11 at Pg ID 2440-46.)  The Township

offers no "concrete" or "affirmative" evidence to the contrary.  *Anderson*, 477 U.S.

at 256-57.  There also is evidence that COs were issued at the time.  (ECF No. 82-5

at Pg ID 2410-11, ¶¶ 2, 5-9; ECF No. 82-9 at Pg ID 2430-31, ¶¶ 2, 7, 8; ECF No.

82-10 at Pg ID 2436, ¶¶ 8-9; ECF No. 82-11 at Pg ID 2442-43, ¶¶ 2, 8, 9.)  Thus,

---

[18] In its Counter-Complaint, the Township alleged that COs were never obtained
for the buildings at issue when they were first constructed (*see* ECF No. 17);
however, the Township has since modified its assertion to be that new COs were
not issued after modifications to the buildings were made (*see* ECF No. 89 at Pg
ID 2970).  The Township never amended its pleading to conform to this new
argument.  Nevertheless, the Court will ignore that defect as, for the reasons
discussed herein, it does not alter the outcome.

the Court cannot conclude that the buildings have been occupied in violation of the Township's Zoning Ordinance or Building Code.

5601, Inc. admits that COs have not been posted at the subject buildings since June 1, 2018.[19]  (*See* ECF No. 89-5 at Pg ID 3125.)  Nevertheless, 5601, Inc. argues that the relief the Township seeks for these violations—in excess of $1 million per year ($500 per day for six buildings)—violates the Excessive Fines Clause of the Eighth Amendment.  5601, Inc. contends that the fines sought are particularly outrageous because the failure to post COs is likely due to the Township's own prior practice of failing to give building owners paper copies of COs.  The Township argues in response that the fines are not excessive.

The Sixth Circuit explained the reach of the Excessive Fines Clause in its recent decision addressing the Township's tree ordinance:

> The Excessive Fines Clause of th[e Eighth] Amendment, as applied to localities through the Fourteenth, dictates that "excessive fines" shall not be "imposed." U.S. Const. amend. VIII.  As is clear from its language, the clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Austin v. United States*, 509 U.S. 602, 609-10 . . . (1993) (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 . . . (1989)).  It guards only "against abuses of the government's punitive or criminal-law-enforcement authority." *Timbs v. Indiana*, -- U.S. --, 139 S. Ct. 682, 686 . . . (2019).  So

---

[19] This is the date the ordinance requiring such posting became effective. *See* Twp. Code of Ord. § 38-32 (revising Section 104.7.3 of the Fire Code).

a monetary demand that is retributive or deterrent and thus intended to punish, even in part, is subject to the limitations of the Excessive Fines Clause. *Austin*, 509 U.S. at 621, 113 S. Ct. 2801 (quoting *United States v. Ward*, 448 U.S. 242, 254 . . . (1980)). But a demand that is related only to "damages sustained by society or to the cost of enforcing the law," and thus wholly remedial, is not. *Ward*, 448 U.S. at 254 . . ..

*F.P. Dev., LLC*, 16 F.4th at 208-09. The Sixth Circuit concluded that the tree ordinance did not implicate the Excessive Fines Clause because its purpose is remedial—"to remedy the harm that removing trees causes"—and "it purports to estimate the monetary demands it makes based on the cost it expects to incur replacing them." *Id*. at 209. The court pointed out that "[t]here is a form of punishment under Michigan law for [the plaintiff]'s violation of the ordinance: a $500 fine and up to 90 days' imprisonment. But Canton has not levied that fine." *Id*. at n.6.

Similarly, the Township has not levied a fine here but appears to be only using the threat of the fine to coerce 5601, Inc. to comply with the Fire Code and post COs in its buildings. The Township alleges only that 5601, Inc. is subject to the fine "for each day that the violation continues (*see, e.g.*, ECF No. 17 at Pg ID 626 ¶¶ 107, 108) and asks the Court only to assess the fine "for the continuous violations of Township Ordinance" (*id.* at Pg ID 631). The Notice of Violation in fact states that the failure to correct the violations by the compliance day "*may* result in court action" and "[u]pon conviction, defendant *may* be subject to

46

penalties *of not more than* $500 and/or 90 days in jail."  (*See* ECF No. 92-9 at Pg

ID 3737 (emphasis added).)  "Eighth Amendment challenges are generally not ripe

until the imposition, or immediately impending imposition, of a challenged

punishment or fine."  *Infinity Outdoor, Inc. v. City of New York*, 165 F. Supp. 2d

403, 431 (E.D.N.Y. 2001) (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir.

1995)); *see also Kraebel v. Michetti*, No. 93 CIV. 4596, 1994 WL 455468, at *11

(S.D.N.Y. 1994) ("Merely being potentially subject to fines, without an actual

finding of liability, is not enough to state a claim for an Eighth Amendment

violation.").  Further, 5601, Inc. fails to cite any authority supporting the

application of the Eighth Amendment to the kind of county government civil fines

threatened here.  This Court did not find such authority in its own research.

While 5601, Inc.'s excessive-fines argument fails, the Court nevertheless

declines to grant summary judgment to the Township on its claims related to the

posting of COs.  This is because the parties have not addressed the viability of the

Township's counterclaims if the trier of fact concludes that its enforcement actions

were retaliatory.  As the Sixth Circuit explained in *Futernick*:

> Usually, a claim of selective enforcement arises as a defense in
> a criminal prosecution or regulatory enforcement actions.  In
> this context, the court should dismiss a case, or take other
> appropriate action, if the defendant can prove that the
> prosecutor or investigator intentionally "singled him out" for
> punishment because of membership in a protected group or the
> exercise of a constitutionally protected right.

47

78 F.3d at 1056 (citing *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991) (criminal prosecution); *Schehl v. Comm'r of IRS*, 855 F.2d 364, 367 (6th Cir. 1988) (civil action for penalties)).

### C.    Conclusion

In summary, the Township's counterclaims are not time-barred.  Therefore, the Court is denying 5601, Inc.'s motion for summary judgment with respect to those counterclaims.  The Court finds a genuine issue of material fact precluding summary judgment in favor of the Township with respect to its counterclaims alleging violations of the Zoning Ordinance and Building Code due to a failure to obtain COs.  However, there are no genuine issues of material fact with respect to whether COs were posted in the properties, as required under the Fire Ordinance. Nevertheless, the Township's ability to prevail on its counterclaims should be reserved until the trier of fact resolves Plaintiffs' claims.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Dismiss Defendants' Counterclaims (ECF No. 53) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the parties' cross-motions for summary

judgment (ECF Nos. 82, 83, 88, & 89) are **DENIED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 11, 2022

49